**CIVILLE & TANG, PLLC**
330 HERNAN CORTEZ AVENUE, SUITE 200
HAGÅTÑA, GUAM 96910
TELEPHONE: (671) 472-8868/69
FACSIMILE: (671) 477-2511

*Attorneys for Defendant*
*Norman Hon Suen Chan*



FILED
DISTRICT COURT OF GUAM
MAR 26 2007
MARY L.M. MORAN
CLERK OF COURT

## IN THE UNITED STATES DISTRICT COURT OF GUAM

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | CRIMINAL CASE NO. 05-00036 |
| Plaintiff, ) | |
| vs. ) | |
| ) | **DEFENDANT'S RESPONSE TO** |
| NORMAN HON SUEN CHAN, ) | **PRESENTENCE REPORT** |
| Defendant. ) | |

### I. Acceptance of Report.

Defendant accepts the findings in the Presentence Report ("PSR") except for the determination in paragraph 48 that Defendant should be given a two level enhancement because he was "a leader of a criminal activity" within the meaning of § 3B1.1 (c) of the Federal Sentencing Guidelines. The basis for two level enhancement is summarized in ¶ 39 of the PSR, and includes a finding that: Mr. Chan applied for a Saipan visitor's entry permit for a woman named Wen; Chan mailed the entry permit to a man named Leung in Hong Kong; Chan made hotel reservations on Saipan for three people including Ren; Chan, from Saipan, made hotel reservations for Ren to have a place to stay when she reached Hawaii; and, Chan drove Ren and her escort to the airport in Saipan.

Chan disputes this finding for two reasons. First, even if the Court drew the most unfavorable inferences possible from the allegations in ¶ 39, the facts alleged therein and in the PSR as a whole, do not support a finding that Chan was a leader, or that he exercised management responsibility over assets or activities of a criminal organization. Second, the PSR draws inferences which are not supported by the facts. Nothing in the factual findings in the PSR support a finding that Chan was a leader. Chan was contacted in June 2004 by his friend, Leung, who asked Chan to sponsor Chinese citizens into Saipan. *PSR* ¶ **32.** In and of itself there was nothing unlawful about this; Chinese visitors to the CNMI need a visitors visa.[1] Chan had applied for visitor permits for other persons over the years and there is no suggestion that there was anything illegal in doing this. Chan said that he was willing to help because he thought this would help his restaurant business. *PSR* ¶ **42.** There is nothing in the PSR which would support a finding that, at that point Chan knew something illegal was afoot, and certainly nothing to suggest that he was an organizer or leader of the scheme which was apparently the brainchild of Leung.

Once the visitor permit was issued, Chan did the ministerial task of mailing it to China so the traveler could enter the CNMI. Again, in and of itself, there was nothing wrong with this; visitor permits are meant to be mailed overseas so that the person traveling to the CNMI will be able to board an airplane. There is nothing in the PSR which suggests that Chan was the mastermind of this smuggling plan, that he was directing Leung or Ren in what to do, or even that Chan knew at that point that Leung was going to use the CNMI visitor visa for an illegal purpose. Similarly, the mere fact that Chan made hotel reservations at Leung's request is on its face

---

[1] The CNMI has local control over immigration into the CNMI, and issues visitor, business and resident visas separate from those issued by U.S. immigration authorities.

insufficient to establish that Chan was a leader, or even that he knew, at that point, that Leung was engaged in an illegal activity.

The PSR reflects that the first time that Chan became aware of the illegal nature of the enterprise was after Ren and "Michael" arrived from China. At a meeting in a hotel room in Saipan, Michael met "in private" with Chan, *PSR ¶ 35,* and told Chan of the plan to smuggle Ren into the United States. *Ibid. & PSR ¶ 36.* Chan agreed to help. From that point on, Chan's involvement was that of a driver and helper, providing the ring leaders with assistance in making reservations and asking a friend to use his credit card to confirm the hotel reservation. While these actions was admittedly illegal, they were not the actions of a leader or organizer and not the type of conduct which warrants a two level leadership enhancement under § 3B1.1 ( c).

The comments to the Guidelines provide:

> To qualify for an adjustment under this section, the defendant must have been the organizer, leader, manager, or supervisor of one or more other participants...or [have] exercised management responsibility over the property, assets, or activities of a criminal organization.

§3B1.1, Application Note 1.

The law in this Circuit is straightforward in requiring a showing that some degree of control or organizational authority over others is required in order for a § 3B1.1 enhancement to apply. For example, in *United States v. Mares-Molina*, 913 F.2d 770 (9th Cir. 1990), where the defendant plead guilty to conspiracy to distribute cocaine, the Ninth Circuit held there was insufficient evidence to support a finding that the defendant was an organizer, leader, manager or supervisor so as to support a two-point upward adjustment under U.S.S.G. § 3B.1.1. The court stated that:

> Application Note 3 of section 3B1.1, which sets forth the factors to be considered in distinguishing "leaders and organizers" from

3

"managers and supervisors," indicates that some degree of control or organizational authority over others is required in order for section 3B1.1 to apply.

*Factors the court should consider include the exercise of decision making authority, the nature of participation in the commission of the offense, the recruitment of accomplices, the claimed right to a larger share of the fruits of the crime, the degree of participation in planning or organizing the offense, the nature and scope of the illegal activity, and the degree of control and authority exercised over others.*

Sentencing Guidelines, § 3B1.1, Application Note 3. The First Circuit expounded on the control requirement in *United States v. Fuller*, 897 F.2d 1217, 1220 (1st Cir.1990), wherein it held that in order for section 3B1.1(c) to apply, *the defendant must have exercised some control over others involved in the commission of the offense or he must have been responsible for organizing others for the purpose of carrying out the crime.* This requirement is implicit in the terms 'organizer, leader, manager and supervisor,' each of which suggests the presence of underlings or subordinates.

*See United States v. Anderson*, 895 F.2d 641, 646 (9th Cir.1990) (defendant "gave specific instructions and planned their conduct throughout the course of the enterprise").

*Id.* at 773.

As later summarized by the Ninth Circuit in *United States v. Salcido-Corrales*, 249 F.3d 1151 (9th Cir. 2001), in affirming summarized the standard under 3B1.1 as follows:

> Section 3B1.1(c) of the Sentencing Guidelines increases a defendant's offense level by two levels "[i]f the defendant was an organizer, leader, manager, or supervisor" in criminal activity that involved fewer than five persons and that was not otherwise extensive. We review for clear error the district court's determination that a defendant qualifies for a role adjustment under the Guidelines. *United States v. Maldonado*, 215 F.3d 1046, 1050 (9th Cir.2000).
>
> An adjustment is warranted if the evidence shows that the defendant acted in one of the four roles specified in the guideline. *United States v. Harper*, 33 F.3d 1143, 1150 (9th Cir.1994). "[T]o sustain a finding that a defendant in fact played one of the four

4

> specified roles, *there must be evidence that the defendant 'exercised some control over others involved in the commission of the offense [or was] responsible for organizing others for the purpose of carrying out a crime.'* " *Id.* at 1151 (quoting *United States v. Mares-Molina,* 913 F.2d 770, 773 (9th Cir.1990);1899;1899). Under the second application note to § 3B1.1, "[t]o qualify for an adjustment under this section, the defendant must have been the organizer, leader, manager, or supervisor of *one or more* participants" (emphasis added). "A single incident of persons acting under a defendant's direction is sufficient evidence to support a two-level role enhancement." *Maldonado,* 215 F.3d at 1050.

*Id.* at 1154.

In the present case:

- There is no evidence that Chan exercised any control over supervision over any other person, e.g., he did not recruit anyone to participate in the smuggling, he played no role in finding the person being smuggled, he did not give instructions to anyone, and he did not know or give instructions to anyone on the U.S. receiving end of the smuggling pipeline.

- There is no evidence that Chan played any role managing assets of the criminal enterprise; i.e. he did not set prices, he did not collect money, he did not hold money or property for anyone in the smuggling ring.

- There is no evidence that Chan had decision making authority over the enterprise; e.g. he did not set travel dates, he did not dictate the route people would travel, he did not arrange for the chaperone – in short, he did not have the authority to give orders to anyone in the ring.

- There is no evidence that Chan recruited accomplices. The only evidence that Chan involved any outsider is the finding, after Ren and her chaperone were in Saipan, they asked Chan to help them book a reservation in Hawaii. *PSR* ¶ 36. Chan asked a friend, Jack Manglona, to let him use Manglona's credit card so that Chan could give a credit card guarantee for a hotel room

5

in Hawaii. *Ibid.* There is no suggestion that Manglona was aware of the illegal activity or that he was in any manner an accomplice to the crime.

- There is no evidence that Chan claimed a right to a larger share of the fruits of the crime. In fact, the only gain mentioned in the PSR that Chan received was $300 in reimbursement for money he had paid for the hotel and an expectation that his restaurant would profit in the future, or that he participated in planning or organizing the offense, or that he exercised any control and authority over others. Even assuming that Chan knew from the time that Leung first approached him and asked to obtain CNMI visitor visas that this was part of an illegal plan to smuggle people into the United States (which Chan denies), nothing in the PSR supports the conclusion that Chan was a leader within this group.

In light of the foregoing, Mr. Chan submits that the correct offense level is Offense Level 10, Criminal History Category I, which is a Zone B violation carrying a sentencing range of 6-12 months.

## II. Recommended Sentence.

Mr. Chan stands before the Court convicted of a violation of 8 U.S.C. § 1324(a)(2)(B)(ii). He is 64 years old and a first time offender. He is hard working and a devoted father. The details of his background are set forth in detail in the PSR. Although the guideline range for this offense is either 12-16 months (if the Court accepts the Probation Department's determination that this is a Level 12 Category I offense) or 6-12 months (if the Court accepts Chan's analysis and determines that this is a Level 10, Category I offense), because there is a statutory three year mandatory minium sentence, the Court does not appear to have any discretion unless Mr. Chan qualifies for

6

Case 1:05-cr-00036    Document 57    Filed 03/26/2007    Page 6 of 7

a downward departure. There is a motion to continue the sentencing pending before the Court to allow Mr. Chan additional time to provide assistance which would enable him to qualify for a downward departure. The motion is supported by the Immigration and Custom Enforcement Service, which believes that Mr. Chan has shown a genuine willingness to cooperate and that he can provide valuable assistance to ICE, but opposed by the United States Attorneys Office.

If the motion to continue is granted after the Court interviews Michael Hernandez, the ICE agent who believes that Mr. Chan can be helpful to his agency, Mr. Chan believes that he will provide the type of cooperation which will qualify him for a downward departure, and which will allow the Court to have more discretion over his sentence.

Respectfully submitted this 26th day of March, 2007.

CIVILLE & TANG, PLLC

By: *[signature]*
G. PATRICK CIVILLE
*Attorneys for Defendant*
*Norman Hon Suen Chan*